**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **JULIO FUENTES,** ) | |
| ) | |
| **Plaintiff,** ) | **Case  No. SACV 11-1960 AJW** |
| ) | |
| **v.** ) | **MEMORANDUM OF DECISION** |
| ) | |
| **COMMISSIONER OF THE SOCIAL** ) | |
| **SECURITY ADMINISTRATION,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2].  In a November 12, 2010 written hearing decision that constitutes the final decision of the Commissioner, an administrative law judge ("ALJ") found that plaintiff has the severe impairment of degenerative disc disease of the lumbar spine. [Administrative Record ("AR") 11].  The ALJ further found that plaintiff retained the residual functional capacity ("RFC") to perform a full range of light work.  [AR 11].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error.  Stout v. Comm'r, Social Sec.Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted).  The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision.  Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

**Treating source opinion**

Plaintiff contends that the ALJ erred in failing to consider the opinion of his treating orthopedist, Mark Brown, M.D.  [JS 2-3, 6-8].

Plaintiff saw Dr. Brown at the Orthopaedic Medical Group of Santa Ana, Inc. in Tustin, California from December 2000 through June 15, 2005, and in August 2007.  [AR 183-198, 200-243, 280-307].  Dr. Brown summarized the background of plaintiff's injuries in various reports through the years.  [See, e.g., AR 223-231, 281-283].  Plaintiff reported that while working for Quicksilver, he injured his back on March 18, 1998, September 9, 1999, October 13, 1999, and February 1, 2000 by pulling a pallet jack or by lifting heavy boxes.  [AR 224].  Plaintiff said that he was terminated from Quicksilver in July 2000 for reasons unrelated to his back injuries.  [AR 225].

Plaintiff was referred to Dr. Brown in December 2000 in connection with a workers' compensation claim.  At plaintiff's initial examination on December 4, 2000, Dr. Brown concluded that plaintiff had "[l]umbar spine strain/sprain, rule out nerve root impingement."  [AR 241].  He considered plaintiff

1  "temporarily totally disabled"[1] and ordered an MRI.  [AR 225, 241-242].

2          On January 2, 2001, the MRI revealed moderate spinal stenosis at L4-5 with anterior and posterior

3  indentation on the thecal sac, and mild relative stenosis at L2-3.  [AR 180-181, 225].  The MRI also revealed

4  a three to four millimeter disc protrusion at L2-3, and a moderate thecal sac indentation at L4-5 related to

5  a four millimeter posterior disc protrusion.  [AR 180-181, 225].

6          Progress reports indicate that Dr. Brown then saw plaintiff and instructed him to remain off work

7  on January 15, 2001 [AR 197], February 19, 2001 [AR 195], and March 26, 2001 [AR 193].  On April 27,

8  2001, Dr. Brown reviewed plaintiff's medical records and concluded that he "should remain off of work,

9  and is considered to be Temporarily Totally Disabled."  [AR 234].  Dr. Brown instructed plaintiff to return

10  for a follow-up visit three days later.  [AR 234].  Plaintiff returned on April 30, 2001 and reported increased

11  pain.  [AR 191].  Dr. Brown again instructed him to remain off work until June 6, 2001.  [AR 191].

12          Upon examination on June 6, 2001, Dr. Brown noted that plaintiff had normal heel-to-toe gait

13  without limping, and that he was not wearing a back support.  [AR 226].  However, there was tenderness

14  over the midline lumbosacral area and over L5-S1 bilaterally, and he concluded that plaintiff's low back

15  pain complaints appeared consistent with the findings in the MRI study.  [AR 225-227].  Dr. Brown

16  diagnosed plaintiff with lumbar spine strain/sprain, and a "3-4 mm disc bulge at L2-3, causing moderate

17  right neural foraminal stenosis and a 4 mm disc bulge at L4-5, causing moderate canal stenosis."  [AR 227].

18  Because plaintiff continued to have substantial pain and his condition seemed to have plateaued in response

19

20

21  _____

22          [1]     Under California workers' compensation law, "the term 'temporarily totally disabled' means
    that an individual is 'totally incapacitated' and 'unable to earn any income during the period when
23  he is recovering from the effects of the injury.'"  Iatridis v. Astrue,  501 F.Supp.2d 1267, 1277 (C.D.
    Cal. 2007) (quoting Booth v. Barnhart, 181 F.Supp.2d 1099, 1103 n.2 (C.D. Cal. 2002); Rissetto v.
24  Plumbers & Steamfitters Local 343, 94 F.3d 597, 600, 605 (9th Cir.1996); Herrera v. Workmen's
    Comp. Appeals Bd., 71 Cal.2d 254, 257 (1969)); see also Robinson v. Workers' Comp. Appeals Bd.,
25  194 Cal.App.3d 784, 792, 239 Cal.Rptr. 841 (1987) ("The period of temporary total disability is that
    period when the employee is totally incapacitated for work and during which he may reasonably be
26  expected to be cured or materially improved with proper medical attention[,] or until his condition
    becomes permanent and stationary.") (internal quotation marks and citations omitted).

27

28

3

1    to treatment, Dr. Brown rated plaintiff's disability status as "permanent and stationary."[2]  [AR 228].  Dr.

2    Brown also indicated that plaintiff was precluded from "heavy lifting and repetitive bending and stooping"

3    and "prolonged weightbearing activities."  [AR 229].

4         Dr. Brown continued to see plaintiff, and instructed plaintiff to remain off work and maintained his

5    "permanent and stationary" disability status on July 2, 2001 [AR 189, 290], August 13, 2001 [AR 187, 292],

6    October 25 & 29, 2002 [AR 208-210, 217, 220, 296-298], January 15, 2003 [AR 205], and April 12, 2004

7    [AR 202, 302].  A June 15, 2005 progress report indicates that Dr. Brown saw plaintiff again for his

8    persistent low back pain.  [AR 185, 304].  His objective findings were that plaintiff's lumbar spine remained

9    tender at L5-S1 and noted various flexion restrictions.  [AR 304].  He prescribed plaintiff pain medication.

10   [AR 304].  An August 13, 2007 progress report indicates that Dr. Brown saw plaintiff again for increased

11   pain in his low back.  [AR 183-184, 306].  Dr. Brown again noted tenderness in the lumbar spine at L4-5

12   and L5-S1 and prescribed pain medication.  [AR 306-307].[3]

13        During the October 27, 2010 hearing, the ALJ asked the vocational expert ("VE") whether a

14   hypothetical person who was able to perform light work[4] could perform any of plaintiff's past work.  The

15

16        [2]  "Permanent and stationary" is a term of art relevant to California workers' compensation
     law.  Viramontes v. Astrue, 2010 WL 3212861, at *7 n.5 (E.D. Cal. Aug. 12, 2010).  "A disability
17   is considered 'permanent and stationary' for California workers' compensation purposes 'after the
     employee has reached maximum medical improvement or his or her condition has been stationary
18   for a reasonable period of time.'"  Viramontes, 2010 WL 3212861, at *7 n.5 (quoting Jenkins v.
     Astrue, 628 F.Supp.2d 1140, 1145 n.2 (C.D. Cal. 2009)); see Gangwish v. Workers' Comp. App.
19   Bd., 89 Cal.App.4th 1284, 1290 n. 7 (2001) (citing Cal. Code Regs., tit. 8, § 10152).
20

21        [3]  Plaintiff subsequently received treatment from two other orthopedic surgeons who filed
     workers' compensation reports.  Dr. Israel Rotterman concluded that plaintiff was temporarily
22   totally disabled from June 30, 2009 to March 9, 2010 [AR 311-327], and Dr. Jack Piasecki
     concluded that plaintiff should remain off work due to his permanent and stationary status between
23   April 2010 and August 4, 2010.  [AR 308-320, 329-333].

24        [4]"Light work" involves lifting no more than twenty pounds at a time with frequent lifting or
     carrying of objects weighing up to ten pounds. The full range of light work requires standing or
25   walking, off and on, for a total of approximately six hours of an eight-hour workday.  Sitting may
     occur intermittently during the remaining time.  In addition, occasional bending from the waist is
26   required to lift and carry objects.  See 20 C.F.R. §§ 404.1567(b), 416.967(b); Social Security Ruling
     ("SSR") 85-15, 1985 WL 56857, at *6-*7; SSR 83-10, 1983 WL 31251, at *5-*6; SSR 83-14, 1983
27   WL 31254, at *4-*5.

28

1   VE stated that such a person could perform plaintiff's prior assembly position. [AR 37]. Plaintiff's counsel

2   asked the VE to assume that the same hypothetical person could perform the lifting and carrying

3   requirements of light work, but would be precluded from "prolonged weight-bearing, which would be

4   standing or walking," as indicated in Dr. Brown's reports. [AR 38]. The VE testified that such a person

5   would not be able to perform any of plaintiff's past work. [AR 38].

6       The ALJ summarized the medical evidence in his decision, including parts of Dr. Brown's medical

7   reports and progress records. [AR 12-13]. The ALJ found that plaintiff's medically determinable

8   impairment could reasonably be expected to cause the alleged symptoms, but discounted their severity

9   because he found that plaintiff's statements were not wholly credible. [AR 13]. The ALJ found that

10  plaintiff retained the RFC for "the full range of light work," in that he could "lift twenty pounds occasionally

11  and ten pounds frequently, stand and walk six hours of an eight-hour workday, sit six hours of an eight-hour

12  workday with normal breaks and occasional stooping . . ." [AR 11 (citing 20 C.F.R. § 404.1567(b))].

13      A treating physician's opinion is not binding on the Commissioner with respect to the existence of

14  an impairment or the ultimate issue of disability. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir.

15  2001). However, a treating physician's medical opinion as to the nature and severity of an individual's

16  impairment is entitled to controlling weight when that opinion is well-supported and not inconsistent with

17  other substantial evidence in the record. Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001);

18  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see 20 C.F.R. §§ 404.1527(d)(2),

19  416.927(d)(2); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *1-*2. Even when not entitled

20  to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed"

21  in light of (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and

22  extent of the treatment relationship; (4) the supportability of the diagnosis; (5) consistency with other

23  evidence in the record; and (6) the area of specialization. Edlund, 253 F.3d at 1157 & n.6 (quoting SSR 96-

24  2p and citing 20 C.F.R. § 404.1527); Holohan, 246 F.3d at 1202.

25      If a treating source opinion is uncontroverted, the ALJ must provide clear and convincing reasons,

26  supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor,

27  a treating or examining source opinion may be rejected for specific and legitimate reasons that are based

28  on substantial evidence in the record. Batson v. Comm'r, Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir.

2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The Commissioner has pointed to no opinion that conflicts with Dr. Brown's assessment, and there does not appear to be any conflicting report or opinion in the record. As the uncontroverted opinion of a treating physician and specialist in the relevant field of orthopedics, Dr. Brown's opinion is entitled to controlling weight, and the ALJ must provide clear and convincing reasons for rejecting it.

The ALJ did not do so. The ALJ summarized one of Dr. Brown's reports but did not provide any reasons, let alone clear and convincing reasons, for rejecting his opinion. Although the ALJ noted that "Dr. Brown said the claimant remained permanent and stationary," the ALJ did not explain the significance of this conclusion for purposes for purposes of the social security disability evaluation, nor did he explain how he interpreted or weighed Dr. Brown's opinions that plaintiff was "temporarily totally disabled" or Dr. Brown's workers' compensation disability ratings. [AR 12]. While workers' compensation ratings are not controlling in disability cases decided under the Social Security Act, the ALJ must consider workers' compensation medical opinions and must "translate" workers' compensation terms of art in order to accurately assess the implications of those opinions for the social security disability determination. See Booth v. Barnhart, 181 F.Supp.2d 1099, 1105-1109 (C.D. Cal. 2002); see also Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); Coria v. Heckler, 750 F.2d 245, 247-248 (3d Cir.1984).

The Commissioner points out that there are long gaps in Dr. Brown's treatment of plaintiff, that plaintiff was retraining to become an assembler, and that plaintiff used Tylenol to treat his symptoms. [JS 4-5]. The Commissioner also attempts to translate worker's compensation law to social security law for the ALJ. [JS 5]. The Commissioner's attempts to salvage the decision fail because this court is required "to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009); see Stout, 454 F.3d at 1054 (stating that the court is "constrained to review the reasons the ALJ asserts" for the denial of benefits and "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (quoting Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001)).

The Commissioner also contends that any error was harmless because the ALJ's RFC finding did

not materially differ from Dr. Brown's opinion.  [JS 5-6].  That contention fails to address plaintiff's argument that Dr. Brown's uncontroverted opinion, coupled with the VE's testimony under the hypothetical based on Dr. Brown's restrictions, warrants the conclusion that plaintiff is disabled.  [JS 3; AR 38].  The Commissioner asserts that there is no indication that the VE understood worker's compensation terms, but there is no indication that she did not.  The ALJ called her as an expert witness, relied on her testimony in other respects, and gave no suggestion that he considered any part of her testimony unreliable. [AR 13-14, 37-38].

The ALJ failed to provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting Dr. Brown's opinion. See Batson, 359 F.3d at 1195.  Therefore, the ALJ committed reversible legal error.

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court.  See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S.  1038 (2000). The Ninth Circuit has adopted the "Smolen test" to determine whether evidence should be credited and the case remanded for an award of benefits:

(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, 211 F.3d at 1178 (quoting Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996)).  Where the Smolen test is satisfied with respect to the evidence in question, "then remand for determination and payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting" the improperly discredited evidence.  Harman, 211 F.3d at 1179; Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1400-1401 (9th Cir. 1988).

The appropriate remedy in this case is a remand for further administrative proceedings because the it is not clear from the record that the ALJ would be required to award benefits if the ALJ properly weighed

7

the medical opinion evidence and considered it in conjunction with the VE's testimony, and because the date of onset and duration of any period of disability are outstanding issues that remain to be resolved. Furthermore, the ALJ cited Dr. Brown's examination findings in evaluating plaintiff's credibility. [AR 13]. A proper assessment of Dr. Brown's records may affect the evaluation of plaintiff's credibility and ultimately the RFC, issues plaintiff raises here. [JS 9-12, 20-21]. On remand, the ALJ shall conduct a supplemental hearing and issue a new decision that applies the correct legal principles and includes a complete evaluation of the medical evidence and testimony of record. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-1116 (9th Cir. 2003) (applying the Smolen test to hold that while the ALJ did not properly reject the opinions of the treating physicians or the claimant's subjective complaints and lay witness testimony, several "outstanding issues" remain to be resolved, including whether, according to a vocational expert, there was alternative work the claimant could perform).[5]

### Conclusion

For the reasons stated above, the Commissioner's decision is **reversed**, and the case is **remanded** for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

January 7, 2013

_____
ANDREW J. WISTRICH
United States Magistrate Judge

---

[5] This disposition makes it unnecessary to consider plaintiff's remaining contentions.